IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

| | |
|---|---|
| CURTIS JAMES LEE, JR., )<br>    Plaintiff,          )<br>                          )<br>v.                        )<br>                          )<br>B.L. KANODE, et al.,      )<br>    Defendants.        )<br>                          ) | Civil Action No. 7:20-cv-00305<br><br>MEMORANDUM OPINION & ORDER<br><br>By:   Joel C. Hoppe<br>      United States Magistrate Judge |

Plaintiff Curtis James Lee, Jr., a Virginia inmate appearing pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983. *See* ECF Nos. 1, 10. The case is before me by the parties' consent under 28 U.S.C. § 636(c). ECF No. 41. The matter is currently before the Court on Defendants B.L. Kanode and Dr. R. Sturdivant's (collectively, "Defendants") Motion for Summary Judgment. ECF No. 34. For the following reasons, the motion is hereby GRANTED.

I. Standard of Review

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (per curiam). Facts are material when they "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute exists if "a reasonable jury could return a verdict in favor of the nonmoving party." *Kolon Indus., Inc. v. E.I. DuPont de Nemours & Co.*, 748 F.3d 160, 173 (4th Cir. 2014) (citing *Anderson*, 477 U.S. at 248).

"The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact." *Appalachian Power Co. v. Arthur*, 39 F. Supp. 3d 790, 796 (W.D. Va. 2014) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the moving party makes that showing, the nonmoving party must then produce sufficient admissible evidence to establish a

specific material fact genuinely in dispute. *See* Fed. R. Civ. P. 56(c), (e); *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Goodman v. Diggs*, 986 F.3d. 493, 498 (4th Cir. 2021) (noting that, once the movant carries its initial burden, "the non-movant cannot merely rely on matters in the complaint, but must, by factual affidavit or the like, respond to the motion" with competent evidence). A pro se plaintiff's "verified complaint is the equivalent of an opposing affidavit for summary judgment purposes[] when the allegations contained therein are based on [his or her] personal knowledge," *Goodman*, 986 F.3d at 498, "set out facts that would be admissible in evidence, and show that the [plaintiff] . . . is competent to testify on the matters stated," Fed. R. Civ. P. 56(c)(4). The court does not weigh evidence, consider credibility, or resolve disputed issues—it decides only whether the evidentiary record, viewed in a light most favorable to the non-moving party, reveals a genuine dispute over material fact. *Tolan*, 572 U.S. at 656. If the non-moving plaintiff "fails to respond to a defendant's specific evidence contradicting the conclusory allegations of [his or] her [verified] complaint or other submissions, however, that defendant may be entitled to summary judgment." *Sabbats v. Clarke*, No. 7:21cv198, 2022 WL 4134771, at *5 (W.D. Va. Sept. 12, 2022) (citing *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 875 (4th Cir. 1992)).

## II. Facts & Procedural History

At all relevant times, Lee was an inmate at River North Correctional Center ("RNCC") in Independence, Virginia, where Kanode served as Warden and Dr. Sturdivant served as Senior Psychologist. *See* Defs.' Br. 1, ECF No. 35. In his Complaint, Lee alleges that on November 20, 2018, he was taken to Dr. Sturdivant's office where he was "forcefully" and "unwillingly"

handcuffed to a table pursuant to Dr. Sturdivant's orders. Compl. 3, ECF No. 1.[1] Dr. Sturdivant then questioned Lee about a letter Lee had written to the Attorney General's ("AG") Office a month prior, which Dr. Sturdivant claimed demonstrated Lee's suicidal intent. *Id.* Lee asserts that Dr. Sturdivant misinterpreted the letter and that although he was not suicidal, Dr. Sturdivant never asked Lee any questions about his mental health status. *Id.* Instead, Dr. Sturdivant tried to convince Lee that he was suicidal and that Dr. Sturdivant would help him. *Id.* He told Lee, "I have to do this so I won't have to answer any questions from the Attorney General's Office and my boss." (punctuation corrected).

During their conversation, Dr. Sturdivant was "smiling and looking down at [Lee's] penis while winking his eye, licking his lips, and telling [Lee] just comply." *Id.* (spelling corrected). Dr. Sturdivant then began rubbing Lee's left hand. *Id.* Lee attempted to move his hand, but was unable to because he was handcuffed to the table. *Id.* Dr. Sturdivant looked mad and again ordered Lee to comply. *Id.* Dr. Sturdivant tried to get Lee to sign a form consenting to treatment, but Lee refused because he could not read it "without [his] reading glasses." *Id.* at 3 (alleging that his "reading glasses [were] taken off" and kept in the hallway while he was in the office).

---

[1] Lee's initial complaint, ECF Nos. 1 to 1-1, contains fairly detailed factual allegations against both Defendants. Because that pleading was not signed, however, the Court advised Lee that he needed to file a signed amended complaint. *See* Order of July 12, 2021, ECF No. 30; Fed. R. Civ. P. 11(a). The Court sent Lee a standard § 1983 complaint form, along with a copy of his original handwritten complaint, and advised Lee that he could simply attach the original complaint to the signed amended complaint form. Lee returned the signed amended complaint form, which is verified, but it contains very few factual allegations, and Lee did not attach his original handwritten complaint to the form. *See* Order of July 12, 2021, at 1 (citing Am. Compl., ECF No. 10). "As a general rule, an amended pleading ordinarily supersedes the original and renders it of no legal effect." *Young v. City of Mt. Rainer*, 238 F.3d 567, 572 (4th Cir. 2001) (quotation marks omitted). Based on the totality of the record, however, the Court found that Lee made "a good faith attempt to comply with the court's instructions and that he intended to incorporate the [factual] details from his first complaint into his amended complaint." Order of July 12, 2021, at 1; *see* Fed. R. Civ. P. 10(c); *In re Lowe's Cos., Inc. FSLA & Wage & Hour Litig.*, 517 F. Supp. 3d 484, 512 (W.D.N.C. 2021) (citing *Young*, 238 F.3d at 572)). Accordingly, the Court considers Lee's original pleading to be a signed and verified complaint.

Dr. Sturdivant again massaged Lee's "left hand[,] trying to convince" him that, as a doctor, he knew "when a person is about to kill themselves." *Id.* at 3–4. Lee then signed what he thought was a refusal form as Dr. Sturdivant continued "smiling, winking his eyes, and looking [Lee] up and down." *Id.* at 4.

Dr. Sturdivant then told Lee that he had to put Lee in a "medical strip cell." *Id.* Lee pleaded with Dr. Sturdivant not to place him in the strip cell and allowed Dr. Sturdivant to massage his hand, which Dr. Sturdivant did while smiling. *Id.* Nonetheless, Lee was taken to the strip cell where two officers stripped him of his clothes. *Id.* When the officers went to obtain a smock for Lee to wear, he was left naked in the cell, and Dr. Sturdivant stood outside of the cell "looking straight down at [Lee's] penis, licking his lips and smiling" at him. *Id.* (spelling corrected). When Lee tried to cover his genitals with his hands, Dr. Sturdivant told Lee that he needed "to learn to comply with [his] instructions." *Id.* In response, Lee moved his "hand away so Dr. Sturdivant [could] see [his] penis." *Id.* Dr. Sturdivant smiled and said, "yes, that's right, comply with my instructions and you will be out in . . . 3 days." *Id.* When the officers returned with Lee's smock, Dr. Sturdivant frowned and walked away. *See id.*

The next morning, Dr. Sturdivant returned to Lee's cell and watched Lee through a glass window while licking his lips and smiling. *Id.* As Lee got up from his bunk, his smock opened and exposed his genitals and Dr. Sturdivant was "really liking what he [saw]." *Id.* Lee closed the smock, and Dr. Sturdivant got mad and told Lee he would have to stay in the strip cell for seven days. *Id.* Lee pleaded with Dr. Sturdivant and opened his smock to expose himself to Dr. Sturdivant who then said, "yes, that's right, just comply, and you'll be out in no time." *Id.* Lee closed his smock, and Dr. Sturdivant left the area. *Id.*

4

A few days later, on November 26, Warden Kanode came to Lee's strip cell along with other prison officials, including Dr. Sturdivant. *Id.* Dr. Sturdivant stood behind the other officials and winked at Lee. *Id.* Lee asked Warden Kanode why he allowed Dr. Sturdivant to put him in the strip cell. Warden Kanode said he had "nothing to do" it and that he only had given a copy of Lee's letter to mental health services for their review. *Id.* On an unspecified date, Warden Kanode "stood by and laughed at [Lee] shaking and freezing" in the strip cell. *Id.* at 1. Lee was released from the strip cell on November 29 after nine days. *Id.* at 4. He later submitted two grievances describing Dr. Sturdivant's conduct, *see* Compl. Exs., ECF No. 1-1, at 6, 12–13, but VDOC officials determined that his complaints were "unfounded," *see id.* at 14–16.

Lee asserts that Defendants' actions violated his rights secured by the Eighth and Fourteenth Amendments of the United States Constitution. *Id.* at 2; *see also* Compl. Ex. A, at 1, ECF No. 1-1. He contends that his placement in the strip cell violated both his due process rights and VDOC's internal procedures. Compl. Ex. A, at 2. Lee avers that because of Defendants' actions, he has permanent nerve damage in his elbow and left hand, *id.* at 1, and lives with "the embarrassment . . . [of] knowing another man sexually violated [him] and [his] rights," Compl. 5. *See also* Compl. Exs., ECF No. 1-1, at 5–6, 9–10, 12–13 (grievances describing the same). Lee further alleges that he developed several skin rashes and fungal infections from "sleeping on feces, urine, spit, and blood from other inmates" who were held in the strip cell before him because the cell was not cleaned or sanitized. Compl. Ex. A, at 1–2.

Defendants have moved for summary judgment. ECF No. 34. Dr. Sturdivant submitted an affidavit explaining why he assigned "Lee to Safety Precautions status on November 20, 2018," and specifically denying that he "ever sa[id] anything or ma[de] any gestures . . . of a sexual nature" during his interactions with Lee. *See* Aff. of R. Sturdivant (Sept. 24, 2021), ECF No. 35-

1, at 1–3. Defendants also submitted a photocopy of Lee's handwritten letter to the AG's Office, ECF No. 35-1, at 4–7, and copies of the "'At Risk' Offender Notification" form and other "Mental Health Monitoring Report" forms that Dr. Sturdivant and his associates completed between November 20–28, 2018, *id.* at 8–18. On October 4, the Court issued a notice pursuant to *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975). ECF No. 25. A week later, the Court received Lee's one-page response letter asking that he be allowed "to tell [his] side of exactly what happen[ed]." ECF No. 38. Lee's letter did not respond to Defendants' proffered evidence or otherwise attempt to demonstrate that the parties genuinely disputed some issue of material fact. *See* Fed. R. Civ. P. 56(c), (e). Defendants' motion is now ripe for disposition.

### III. Discussion

Because Lee is proceeding pro se, this Court must liberally construe his pleadings. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Liberally construing Lee's verified complaint, the Court discerns the following claims arising under 42 U.S.C. § 1983: (1) an Eighth Amendment claim against Dr. Sturdivant and Kanode for confining Lee in an unsanitary strip cell for nine days; (2) a Fourteenth Amendment claim against Dr. Sturdivant and Kanode for confining Lee in the strip cell for nine days without due process of law; and (3) an Eighth Amendment claim against Dr. Sturdivant for sexually harassing and sexually assaulting Lee. *See generally* Compl. 2; Compl. Ex. A, at 1–2; Am. Compl. 1–2. He seeks $500,000 in compensatory damages against each Defendant in his individual capacity. Compl. 2; Am. Compl. 2.

    A.    *Claims Regarding Confinement to Strip Cell & Conditions Therein*

Defendants assert that Lee's claims relating to his allegedly unlawful confinement in the strip cell and the conditions therein are barred because he has not exhausted his administrative remedies as to those claims. Defs.' Br. 10–12. The Court agrees.

6

The Prison Litigation Reform Act ("PLRA") requires inmates to properly exhaust "such administrative remedies as are available" before filing any federal lawsuit "with respect to prison conditions." 42 U.S.C. § 1997e(a); *see also Jones v. Bock*, 549 U.S. 199, 211 (2007); *Woodford v. Ngo*, 548 U.S. 81, 93 (2006); *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 736–41 (2001). "There is no question that exhaustion is mandatory under the PLRA," *Jones*, 549 U.S. at 211, and that courts cannot excuse an inmate's failure to exhaust available remedies "in accordance with the [prison's] applicable procedural rules," *Woodford*, 548 U.S. at 88.

Exhaustion is an affirmative defense that the defendant must plead and prove on a claim-by-claim basis. *Jones*, 549 U.S. at 216. Requiring exhaustion of administrative remedies gives prison officials the time and opportunity to address the inmate's complaint internally before being haled into federal court. *Woodford*, 548 U.S. 89; *Fletcher v. Menard Corr. Ctr.*, 623 F.3d 1171, 1173–74 (7th Cir. 2011); *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). "Where the prison provides an administrative grievance procedure, the inmate must file a grievance raising a particular claim and pursue it through all available levels of appeal." *Aziz v. Pittsylvania Cty. Jail*, No. 7:11cv39, 2012 WL 263393, at *4 (W.D. Va. Jan. 30, 2012) (Urbanski, J.). His failure to do so can be grounds for summary judgment in a defendant's favor on any unexhausted claim. *See, e.g., Reynolds v. Doe*, 431 F. App'x 221, 222 (4th Cir. 2011) (per curiam); *Robertson v. Roberts*, No. 7:13cv560, 2014 WL 5801893, at *1 (W.D. Va. Nov. 7, 2014).

Defendants assert that although Lee submitted grievances about Dr. Sturdivant's alleged sexual misconduct, none of his grievances addressed Lee's confinement in the strip cell or the unsanitary conditions of the cell that Lee describes in his pleadings. Defs.' Br. 10–12 (citing Defs.' Ex., Encls. A & B to Aff. of D. Greer (Sept. 24, 2021), ECF No. 35-2, at 1–27). Lee did

7

not offer a substantive response to these assertions by Defendant; he did, however, attach copies of several VDOC grievances and request forms to his Complaint. *See generally* Compl. Exs., ECF No. 1-1, at 3–16.

Of these forms, only two relate to Lee's confinement in the strip cell. *See id.* at 5, 13. In an "Offender Request" dated December 3, 2018, Lee requested to be seen by prison medical staff, stating that although he was supposed to have been seen by medical before leaving the strip cell, medical staff never evaluated him. *Id.* at 5. In the form, Lee also complained of problems with his hand and said his shoulders and buttocks were "raw" from having taken only one shower in nine days, and he requested to be seen by medical staff as soon as possible. *Id.* In a "Regular Grievance" dated June 24, 2019, Lee complained of Dr. Sturdivant's conduct during their discussion of Lee's letter on November 28, 2018, and he said that he was placed in a strip cell where Dr. Sturdivant watched him while he was naked, smiled, and looked at his genitals. *Id.* at 13.

While Lee's "Offender Request" form lists similar physical conditions to those he now alleges resulted from the unsanitary conditions of the strip cell, it does not assert any complaints suggesting his confinement was unlawful or regarding the conditions of the strip cell. Indeed, Lee appears to attribute the "raw" skin on his shoulder and buttocks to the fact that he showered only once in nine days, not to any unsanitary conditions (e.g., bodily fluids or human waste) in the strip cell. Such a complaint does not suffice to provide the prison officials with notice of Lee's complaints regarding the allegedly unsanitary nature of the strip cell or the fact that Lee believed he was put in the strip cell without due process. Moreover, filing a single "Offender Request" is insufficient for Lee to exhaust his administrative remedies under VDOC Operating Procedure ("OP") 866.1, *see* Encl. A to Aff. of D. Greer (OP 866.1 (2016)), which is the process

8

available to resolve inmates' complaints in Virginia prisons, *see Walker v. Kiser*, No. 7:19cv743, 2022 WL 945612, at *5 (W.D. Va. Mar. 29, 2022) (describing that under VDOC OP 866.1, exhaustion requires appealing a Regular Grievance "through the highest eligible level without satisfactory resolution of the issue").

Lee's "Regular Grievance" form mentions his being confined to a strip cell and Dr. Sturdivant's alleged conduct during Lee's time in the cell. It does not, however, assert that he had been unlawfully confined in the strip cell, nor does it mention the allegedly unsanitary conditions of the cell. As such, Lee's grievances did not provide the prison officials with notice of his claims regarding his allegedly unlawful assignment to the strip cell or the allegedly unsanitary conditions of that cell such that the prison officials could redress these complaints before being brought into court. Under the PLRA, proper exhaustion of administrative remedies requires that prison officials have an opportunity to address the specific wrong alleged in the subsequent lawsuit. *See Moore*, 517 F.3d at 729 (holding a prisoner's grievances regarding his allegedly improper medical care for hepatitis "did not give prison officials a fair opportunity to address the alleged inadequate care he received for his gout"). With respect to Lee's claims concerning his confinement in the strip cell and the conditions therein, prison officials were not given that opportunity.

Accordingly, the Court finds that Lee has failed to exhaust administrative remedies for his Eighth and Fourteenth Amendment claims based on his allegedly unlawful confinement in the strip cell and the allegedly unsanitary conditions of that cell. Thus, such claims are barred under the PLRA. *Jones*, 549 U.S. at 211 ("[U]nexhausted claims cannot be brought in court."). As such, Defendants are entitled to a judgment as a matter of law on those claims.

    B.    *Eighth Amendment Claim for Sexual Assault*

9

Lee additionally asserts an Eighth Amendment claim based on Dr. Sturdivant's alleged sexual assault. Defendants refute Lee's account of Dr. Sturdivant's conduct, asserting that Dr. Sturdivant placed Lee in the strip cell for Lee's own safety based on the contents of Lee's letter to the AG's Office, and that Dr. Sturdivant never said or did anything of a "sexual nature" during his interactions with Lee. Defs.' Br. 2–4, 9 (citing Sturdivant Aff. ¶¶ 5–7, 9–10). Lee did not respond to Defendants' proffered evidence.[2] Alternatively, Defendants argue Lee's allegations, accepted as true and viewed in his favor, do not describe misconduct sufficiently "serious" to violate Lee's Eighth Amendment right against cruel and unusual punishment. *Id.* at 9–10. The Court finds that, accepting Lee's verified allegations as true, Dr. Sturdivant's conduct towards Lee does not rise to the level of a constitutional violation. *See Hoglan v. Mathena*, No. 7:18cv140, 2022 WL 625086, at *6 (W.D. Va. Mar. 3, 2022) ("Although the defense of failure to state a claim is typically raised in a 12(b)(6) motion, it may also be asserted in a motion for summary judgment." (citing *Martin v. Sw. Va. Gas Co.*, 135 F.3d 307, 309 n.1 (4th Cir. 1998)).

"To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and must show that the deprivation of that right was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Courts employ a two-prong test to determine whether a correctional officer's alleged misconduct violates a prisoner's Eighth Amendment right to be free from cruel and unusual punishments while incarcerated. *See Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) (citing *Farmer v. Brennan*, 511 U.S. 825 (1994)). The first prong is objective and requires that the challenged misconduct or condition be "sufficiently serious" to constitute cruel and

---

[2] As noted, Lee's verified complaint counts as an "opposing affidavit for summary judgment purposes" to the extent that "the allegations contained therein are based on [his] personal knowledge," *Goodman*, 986 F.3d at 498, and "set out facts that would be admissible in evidence" at trial, Fed. R. Civ. P. 56(c)(4).

10

unusual punishment. *Farmer*, 511 U.S. at 834. The second prong is subjective and requires that the prison official act or fail to act with a "sufficiently culpable state of mind," meaning either "'deliberate indifference' to inmate health or safety," *id.* (prison conditions generally), or "maliciously and sadistically us[ing] force to cause harm," *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (physical force). *See generally Thompson v. Commw. of Va.*, 878 F.3d 89, 97–98 (4th Cir. 2017). "What must be established with regard to each component 'varies according to the nature of the alleged [Eighth Amendment] violation.'" *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996) (quoting *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)); *see Thompson*, 878 F.3d at 97–98.

"There can be little doubt that sexual abuse is repugnant to contemporary standards of decency, and that allegations of sexual abuse can amount to an Eighth Amendment violation." *Jackson v. Holley*, 666 F. App'x 242, 244 (4th Cir. 2016) (per curiam). Nonetheless, courts have recognized that not all alleged incidents of sexual misconduct are objectively, sufficiently serious to constitute a violation of the Eighth Amendment. *See, e.g., id.* (distinguishing between physical "sexual abuse" and verbal "sexual harassment"). Moreover, without some allegation that the defendant's misconduct involved unwanted sexual *touching*—i.e., intentional use of physical force—a complaint of sexual harassment (verbal or nonverbal) against a prison guard does not reach constitutional proportions. *Id.*

Here, Lee alleges that Dr. Sturdivant made inappropriate gestures and stared at Lee's genitals, rubbed Lee's hand several times, and confined Lee to a strip cell to watch him naked for Dr. Sturdivant's sexual gratification. While this conduct, if true, is undoubtedly disturbing, it is not "objectively, sufficiently serious," *Farmer*, 511 U.S. at 834, to give rise to an Eighth Amendment claim for sexual assault. First, the only intentional touching that Lee describes is Dr. Sturdivant's massaging Lee's hand during their discussion of Lee's letter to the AG. Lee alleges

11

that this behavior was unwelcome and that he perceived it as sexual because Dr. Sturdivant had already stared at Lee's clothed crotch and Dr. Sturdivant was winking, smiling, and licking his lips while talking to Lee. Compl. 3–4. To state an Eighth Amendment claim, however, Lee "must allege facts on which he could prove that the unwanted touching had some [objectively] sexual aspect to it; his own [subjective] perceptions alone that the contact was of a sexual nature are not sufficient." *Ellis v. Elder*, No. 7:08cv642, 2009 WL 275316, at *3 (W.D. Va. Feb. 4, 2009) (citing *Berryhill v. Schriro*, 137 F.3d 1073, 1076 (8th Cir. 1998)). Yet, aside from Lee's allegation that he was told to "comply" with an unspecified instruction, the only thing suggesting that Dr. Sturdivant's alleged rubbing of his hand was done in a sexual manner is Lee's own perceptions of Dr. Sturdivant's behavior and mannerisms. Entirely absent from Lee's complaint are any allegations that Dr. Sturdivant made overtly sexually suggestive remarks or propositioned Lee in any way, such that it could reasonably be inferred that his alleged massaging of Lee's hand was done in an objectively sexual manner.

Additionally, although it is not clear that the alleged touching must be inherently sexual in nature, in cases where Eighth Amendment violations have been found based on allegations of unwanted sexual touching, the alleged touching almost always involves contact to the genitals, buttocks, or breasts. *See, e.g., De'lonta v. Clarke*, No. 7:11cv483, 2013 WL 209489, at *4–5 (W.D. Va. Jan. 14, 2013) (finding allegations were "sufficiently serious" where prisoner's breasts and genitals were fondled and prisoner was subjected to sexual and threating remarks over the course of a year, and collecting analogous cases); *Morton v. Johnson*, No. 7:13cv496, 2015 WL 4470104, at *6 (W.D. Va. July 21, 2015) (finding sufficient allegations for Eighth Amendment violation where prisoner alleged official "hugged her, touched her breast, and

12

'rubbed down [her] stomach down to [her] private area and felt [her] up'" (alterations in original)). Lee makes no such allegations here.

Indeed, the Fourth Circuit found, in *Jackson v. Holley*, that no Eighth Amendment violation occurred even where a certain degree of contact inherently sexual in nature was alleged, along with sexually explicit remarks. 666 F. App'x at 244 (finding no constitutional violation where prison psychologist was alleged to have sent inmate a sexually explicit letter, posed seductively and whispered explicit comments to him, and "planted her groin area" in his face). Even inferring that Dr. Sturdivant's alleged massaging of Lee's hand was done in a sexual manner, Lee's allegations, at most, would not rise to the level of conduct in *Jackson*. As such, Lee's allegations fall short of the level of seriousness required to state an Eighth Amendment claim for sexual assault.

Further, where the alleged conduct is less severe, constitutional violations typically are recognized only where the conduct was repetitive. *See Ball v. Bailey*, No. 7:15cv3, 2015 WL 4591410, at *9 (W.D. Va. July 29, 2015). Here, Dr. Sturdivant allegedly touched or sexually harassed Lee on three separate occasions over the course of nine days. Such relatively benign conduct that occurred over a short period is not objectively "sufficiently serious" to state an Eighth Amendment claim for sexual abuse. *See De'lonta*, 2013 WL 209489, at *5 (finding conduct repetitive where it occurred over the course of a year).

Accordingly, even accepting Lee's allegations as true, Dr. Sturdivant's alleged conduct does not amount to an Eighth Amendment violation. Thus, Defendants are entitled to judgment as a matter of law as to Lee's Eighth Amendment claim against Dr. Sturdivant for sexual abuse.

IV. Conclusion

Accordingly, the Court will grant Defendants' motion for summary judgment, ECF No. 34.

The clerk is directed to send a copy of this Order to the parties.

                                              ENTER: September 30, 2022

                                              Joel C. Hoppe
                                              United States Magistrate Judge